16-0301, People v. Joshua Stanton. Will both attorneys that are going to present oral argument today please step up to the podium and identify yourselves for the record. Eric Castaneda with the Office of the State Appellate Defender on behalf of Joshua Stanton. Mr. Castaneda. Leslie Billings on behalf of the people of the state of Illinois. All right. Good morning, Ms. Billings. Each of you will have approximately 10, 20 minutes to present your oral argument. And from that, Mr. Castaneda, you may save some time out for rebuttal. All right? Okay. Good morning, Your Honors. Good morning. As I stated earlier, my name is Eric Castaneda. I'm with the Office of the State Appellate Defender on behalf of Joshua Stanton, the appellant in this case. The undisputed facts of this case are that William Bates and Joshua Stanton were inside of a van in which Bates was the driver and Stanton was the passenger. Shots were fired from the driver's side of this van onto Darrell Owens and Anthony Ray. Approximately five seconds after the shots were fired, police spot the van and begin pursuit. Now, during the police's pursuit of the van, they see a gunfire passing the side window of that van. Were there two series of shots? Yes. According to the witnesses. Okay. So this is after the second series, right? Correct. Okay. After the last shots are fired. Police admittedly do not see who throws that gun out the window. In approximately about a block's distance from where the shots were fired, both William and Bates are apprehended and arrested. Now, based on these facts, the state... Did they have to chase the car? They did pursue the car less than a block's distance. All right. Correct. Based on these facts, the state was unable to identify the shooter and was unable to establish that Joshua Stanton was guilty of the gun charges, either as a principal or under a theory of accountability. Now, under a theory of accountability, the state was required to show that Joshua Stanton specifically aided and abetted William Bates in the shooting of Daryl Owens and Anthony Ray, and they failed to do so, either under a shared intent theory or a common criminal design theory. Could I ask you something? There were six counts of an aggravated, unlawful use of a weapon, correct? Correct, Your Honor. Is it correct that the state says that you're conceding the AUUW counts? No, Your Honor. In my opening brief, I do argue that the AUUW counts were not proven beyond a reasonable doubt. I do misstate that those counts were merged, however, that those counts are actually running concurrent, three years running concurrent with the aggravated battery and aggravated discharge of firearms. So you are contesting that? Yes. All right. Because it would seem kind of inconsistent, so. Yeah. All right. No, yeah, we are contesting that. The issue that I raised in my opening brief is whether this Court could reach a decision on those counts. This Court certainly can, as those counts were also sentenced by the Court, and it's running concurrent with the other charges. Now, in accountability cases centered on shared intent, courts focus on what the defendant knew about the principal's criminal intentions, as one cannot aid or abet a crime that one does not know is going to be committed. Helpful is the decision in Peeble v. Taylor. There the defendant was driving the car. He knew his passenger was carrying a gun. Is that the Supreme Court case? Yes, Taylor, Peeble v. Taylor. He knew his passenger was carrying a gun. They were involved in a traffic altercation involving a racial slur. The passenger, angered at the racial slur, asked the defendant to stop the car. He exited the vehicle and began shooting at the culprit of the racial slur. He then reentered the vehicle, and the defendant drove away. Well, didn't the Court in that case say that mere presence or even knowledge that a gun was in the car didn't in any way suggest that he had knowledge that this other person was going to start shooting? Correct, Your Honor. All right. And here we have less evidence than that. Here the State didn't even prove that Stan had knowledge that Bates was carrying a gun in the car. Instead, here, in order to reach accountability, we have to go through an attenuated chain of mostly unreasonable inferences. Well, wait a minute there. Now, is it really unreasonable, Mr. Castaneda, to say that if the gun came out on the passenger's side, is it unreasonable to say that one could circumstantially infer that it came from the passenger's side of the car? From where he was seated, he was a passenger. Even if that is the reasonable inference, Your Honor, let's assume it is the reasonable inference. And we're contesting that it's not because those facts can equally give the inference that Bates threw that gun out of the window. But do we have the luxury of now going back and deciding whether the trial court could reasonably infer that? It's apparent the Court did infer that. Let's assume that is the correct inference. Yes. So that would be the first inference that has to be made. The second inference would be, then, because that gun was tossed out the window by Mr. Stanton, he was aiding and abetting Mr. Bates specifically to get rid of that evidence. Were there any other inferences derived from the weapon? No, Your Honor. There were gunshot residue tests performed on Mr. Stanton, and those were not introduced at trial. And at closing arguments, the State conceded that those tests were negative. What does the accountability statute say regarding aiding and abetting? Aiding and abetting, you must be aiding and abetting the elements of the crime. Right. So I'm talking about before, during, give me the rest of the language. Either prior or during the commission of the offense that the defendant specifically forms the intent to aid and abet the principal in committing the elements of those offenses. Aren't there a number of cases that say that if the crime is still being committed, in other words, flight, if there's still flight from the offense, that that's actually during the commission? In common criminal design cases, yes, Your Honor. Well, isn't this one of the arguments the State is making, that this is a common criminal design case? Correct, but the State fails to present any evidence that there was a common criminal design, that AIDS and Stanton engaged in some talks before the shooting occurred. Is there any requirement that there be any talks before? No, but there is a requirement that there be a plan or a common criminal design established in order to prove an accountability theory where the identity of the shooter is not identified. If we look at People v. Lopez, there where the State argued that there was a common criminal design between the co-defendants. There, two co-defendants, twin brothers, exited a vehicle. One of the twin brothers remained near the car while the other twin brother crossed the street, believing that the teenagers across the street were part of a rival gang, began shooting at them. He then returned to the vehicle. Both twin brothers then reentered the vehicle, and as the vehicle sped away, they yelled gang slogans from that vehicle. Here, Stanton never exited the vehicle. Well, doesn't that really kind of go against him? There were a series of shots. He has an opportunity to get out of the car, and he absolutely does nothing. Isn't that evidence that he's involved in a common criminal design? No, Your Honor, and I must say in Lopez, there it was found that there was no common criminal design. Here we have less evidence. He didn't get out of the car. He was not the driver. The driver, the van was seen speeding at a high rate of speed, fishing across four lanes of traffic. It's unreasonable to expect him to jump out of this van that was shot at him. Again, aren't you asking us to reweigh the evidence now when the court never ever made a finding like what you're suggesting, that it was unreasonable for him to get out of the car? If he wasn't part of this conspiracy, this common criminal design, he had multiple opportunities to get out of the car. He had an opportunity once there were shots fired. He had an opportunity when the car stopped. He had an opportunity when there were a second number of shots. Your Honor, there's no evidence of exactly whether the car stopped in between the shootings. The testimony— Well, I think there is testimony in the record that the car stopped and then there was a second volume of shots. Right. There's testimony there was two sets of shots. The testimony from Jennifer Looney that the car stopped was after the last set of shots were fired. At the same time, the police said that the car didn't stop at that same intersection, Cottage Grove and 87th Place. The police officer said that they saw the van speeding across four lanes of traffic, fishtailing, and that's when they began pursuit of the van. So is it your position that this is essentially a mere presence case? Yes, this is a mere presence case. In what case would you say most notably suggests that this is a mere presence case? That would be Peeble v. Taylor, Your Honor. Because Taylor was the case where the young man knows that his friend has a gun, but absolutely no knowledge that when they stop and get involved in something where they didn't get involved, his friend just starts taking pot shots. Isn't that correct? Correct. And the court said that in that case there was just mere presence? Correct. Here we have less evidence. We're at a disadvantage. We have less evidence than the evidence that was presented in Taylor. Here we can't even say- Well, what about the bullets on the floor? What about the two different volleys of shots? What about the gun being pitched from the passenger side door? How can you reconcile that and say that this is simply mere presence? Again, we'll go back to the inferences that have to be connected in order to determine accountability. Let's assume that Stanton did throw that gun out of the passenger window. We have to assume that he was helping Bates in getting rid of that gun. So you're saying that that would be not during the commission of the offense? Correct. What case would you actually cite that says fleeing from the scene of the crime is no longer part of the crime? Just give me one case. Taylor, that's exactly what the Supreme Court said there. It said because escape is not part of the elements of shooting at someone aggravated in discharge of a firearm, that is not aiding in the elements of that offense because that offense has been complete when the last set of shots are fired. Similarly here, when Bates fired those last shots, that offense was complete. Was there a throwing away of a weapon in that case? No, but there was a driving away. There was no gun that was being disposed of in that case? No. Were there any bullets found in the car? No, not in Taylor, no, Your Honor. Were there two series of volleys of shots in that case? There were two shots, but not a series of shots. Was there ever a stop by the car in that case? Yes, there was a stop. The principal got out of the car, shot, reentered the car, and then the defendant drove away. Can we change the focus here for a second? All right, so what testimony did your client provide as to why he was in the vehicle in the first place? There was no testimony provided by Mr. Stanton, Your Honor. All right. Was there any association or link between the defendant and Mr. Bates and the individuals that were shot at? No, there was no evidence presented of any link, of any gang activity, none whatsoever. So again, we have to assume that he was helping Bates get rid of that gun, and based on that assumption, we have to assume that he had knowledge that Bates was carrying the gun prior to the shooting, and based on that assumption, we have to assume that he had knowledge of his criminal intent to specifically shoot at Daryl Owens and Anthony Raitt, and based on that assumption, then we have to assume that he engaged in a shared intent or a common criminal design. That's at least five degrees of separation of assumptions that have to be made, and that's not what a reasonable inference is. A reasonable inference is not that all the holes in the state's evidence get filled with good evidence, and even assuming that Stanton did throw that gun out that window, it's not sufficient to get to accountability. Well, what would he be guilty of? We can say he's not guilty of anything because... You mean if you actually take a gun that was just used in shooting at two different sets of people, there's no criminal offense? No, because the state has to establish that he had the intent to possess that gun. We don't know whether Stanton actually... Well, if you're making this grand assumption that your client actually took a gun and threw it out a window to evade the crime you're saying, he did not commit any crime at all. If there's the assumption that he did that to evade, that he didn't do that as a reaction or he was scared, then he might be, if your honors feel that, determined that there was possession of the gun, then he may be found guilty of aggravated unlawful use of a weapon if possession is determined based on those facts. Maybe that's why the state thinks that you've conceded the aggravated unlawful use of a weapon because you've just said that we're assuming he did actually throw the gun out of the car. And that argument is made arguing or assuming that he did throw the gun out of the car because there is no evidence that the police officer Gates admittedly said he didn't see who threw that gun out of the car. It's just as equally as reasonable that it was Bates who threw that gun out of the car. Sure, but that's not the case law when we're reviewing the sufficiency of the evidence. We don't re-weigh what the judge found in terms of the circumstantial evidence where he concluded that Stanton is the one that threw the gun out of the car. And if your honors do find that it was Stanton who threw that gun out of the car, then that aggravated unlawful use of a weapon charge would stand. But it's not something that we're conceding. We're still arguing that he didn't possess that weapon. And similarly, these are two separate theories that were not proven here. Under shared intent based on Taylor, they improved that intent. And under a common criminal design theory, there when two or more persons engage in a common criminal design, any acts in furtherance of that design are attributed to all the parties, and they are all equally responsible. And there are several factors that a court can look at to determine whether a common criminal design was established. One, the presence of the defendant during the planning of the commission of the crime. There was absolutely no evidence here presented that there was a planning of this shooting, much less that Mr. Stanton was present during that planning. Second, the defendant's presence during the commission of the crime with no negative reaction. Well, you're saying there was nothing there? No, there's no evidence. But was he present? He was present, correct. Did he get out of the car? No. All right. And there was no evidence presented. What about flight from the scene? He couldn't have fled from the scene. He was not the one driving the car. He was trapped in a van that was being driven by Mr. Bates. How do we know he was trapped in the car? We don't know that he wasn't. And the burden is on the state to prove that this was planned, that he did voluntarily attach himself in the van and he voluntarily remained in the van. That was not established by the state in this case. Well, isn't that what the court essentially found? You're asking us to reweigh the evidence. And the only evidence that the court had to go by here was – Did he report the incident? No, they were immediately arrested within minutes of the shots being fired, so he didn't have a chance to report. Did he continue his association with the driver? No, Your Honor, because, again, they were immediately arrested, so there wasn't enough time to determine whether there was continued association. Well, what do you mean he was immediately arrested? He was there present during two different sets of shots. How can you say that he wasn't continually in the association? Because he was inside of a van that was being driven by Bates, and the van was driving at some speed, so it's unreasonable to expect any passenger to jump out of a moving vehicle. Well, do you have a case that says that, that on appeal the court can suddenly decide that the trial judge is finding that the offender was participating in a common criminal design, that it was unreasonable for the passenger to get out of the car? Is there any case that says that? No case that says exactly that, Your Honor, but we do have plenty of cases where the trial court's findings were overturned. In People v. Lopez, that's a common criminal design theory, and there the passenger did get out of the car and reenter, and the court found that the trial court got the evidence wrong. There was a sufficiency of the evidence challenge, and they simply got it wrong based on the evidence presented. Here the only evidence that the trial court had to make its decision was that a gun was tossed out of the van, out of the passenger side window of that van. In People v. Washington, very similar facts, where the defendant was inside of a van, he owned the van, there was talks that they were going to retaliate against a rival gang. However, the identity of the shooter from inside that van was never established, and based on those facts, the court found that it was insufficient to prove a common criminal design. And as far as, again, as far as flight from the scene of the crime, Mr. Stanton couldn't have fled from the scene because it was Mr. Bates who was driving that car. It was not Mr. Stanton. In a principal approach, similarly, the evidence was not sufficient to establish the elements of the crimes. In People v. Peterson... Do you really want to rely on that one? Why didn't you pull that out first? Peterson. Peterson, because that's Senate 1, principle establishing that, not accountability, but establishing that Stanton was the actual shooter, and here the evidence is even weaker for the state to establish that. In Peterson, two defendants... Two men shooting at each other. Correct. They shot the victim. The victim saw both defendants shooting, both with a firearm. Didn't the court say that there was no common design at all, because they were at cross purposes? Correct. But the court's focus was that the elements of the gun charges could not be established because they couldn't identify the shooter. If you can't identify the shooter, you can't shoot. But really, wasn't that decision bottomed on the fact that those two men were shooting at each other? They were not shooting at some other victim. Correct, Your Honor. And isn't there a more recent case that sort of affirms that whole idea about when people start dueling? There's Coward. There's People v. Cooper, which was relied on by the trial court and was relied on by the state, and there was a common criminal design that was proven. But those facts are an opposite with the facts in this case. In Cooper, the state established that both co-defendants were part of the Gangster Disciples Gang, that both co-defendants went to rival gangs' territory, the Black Disciples, and both co-defendants discharged firearms. Both co-defendants tested positive for gunshot residue tests. Here, the gunshot residue tests were never introduced at trial. Well, they were negative, weren't they? The state conceded during closing arguments that they were negative. There's absolutely no evidence that this was gang-related, that this was some rival gang retaliation. There was no—both defendants were not seen firing the weapons. All we have—essentially all the evidence we have is that a gun came flying out of that passenger side window, and that is insufficient to establish accountability. Would you like some time for rebuttal? Yes, Your Honor. Thank you. All right. Thank you. So, Ms. Billings, is this what we would call a mere presence at the scene case? This would not be what we would call a mere presence at the scene case. Why? There are six factors to be looked at in determining if a defendant is held accountable for the commission of an offense. The first is the defendant's presence during the planning of the crime. The second is his presence— Was there any evidence of planning? There was not in this case. Why don't you distinguish the cases that counsel relies on? Taylor, Lopez, and, well, Cooper. Peterson is a, you know, two men shooting at each other. So why don't you talk about the cases that he's relying on and why we shouldn't consider them? Yes, in distinguishing Taylor, that was a road rage incident. That was a spontaneous road rage incident. There would have been no opportunity for both the parties in this case to collaborate on the shooting. The Illinois Supreme Court in that court stated that it was uncontested that the defendant did not facilitate or intend to facilitate the commission of any element in the offense. And what was the testimony in that case that established it was actually a road rage incident? There was two individuals in a car. There was an individual from another car who shouted a racial slur. The armed passenger in the vehicle shot out in that case. There was in that specific case testimony by the driver specifically that that person was not aware of anything that was going to go on and that, as a matter of fact, they were startled by the shots that rang out. There's no such evidence like that in the current case. What about Lopez? Yes, in Lopez, we have two brothers, one that remains in the car during the shooting, one that was across the street when the shooting occurred. There was, as compared to this case, we don't have defendant Stanton, who was somewhere out of the way when this shooting took place. Further, it's the state's position that in Lopez, had the brother that was across the street gotten the weapon, disposed of the weapon, or had been side-by-side with the shooter, that would be a completely different case. That is why that case has... So in the Lopez case, are you saying that the defendant never got into the car or it was well after the events? He was not in the presence of the defendant when that shooting took place. He was across the street. Correct. He was across the street. And he never had possession of the weapon. He didn't dispose of that weapon. Okay, fine. What about the last one, Taylor? Or no, I'm sorry, Cooper. All right, Cooper. In that particular case, the court found that there was no common criminal design where rival gang members were firing at each other. That's another dueling case, sort of? That is a gang case, yes, where two gangs were firing at each other. However, also a part of that case, there was an individual by the name of Robinson. The court couldn't determine whether that person was shot by Cooper or Starnes, but that they were both shooting at that person in that case. They were both held accountable in that case for the shooting of the victim. So going back to your statement about this isn't a mere presence case, why isn't this a mere presence? Well, we have, again, a number of factors that are to be looked at in determining if someone is accountable for a crime. The presence during the planning of the crime, the presence at the scene of the crime without any negative reaction to it. We don't know exactly what Stanton's reaction was to the crime when he was in the van, but we do know that the van was pulled over within moments of this happening. At the time that the van was pulled over and he was within the safety, he was in the presence of the officers, he still at that point never tried to exit the vehicle. When the officers approached, never once did Stanton say anything about what happened or make any type of an outcry. We don't have any testimony of that from the officer that testified in this case. Counsel's arguing that he was trapped in the vehicle. He was not, there was no evidence that he was trapped in the vehicle in this case. The vehicle was stopped after the first round of shots were fired and the vehicle was stopped after the police pulled the vehicle over. At that point, he had several moments to be able to get out of that vehicle with the officers presumably right behind him. He never distanced himself from the defendant during this crime in any way, shape, or form. And as a matter of fact, when he had the opportunity to speak to the officers and make an outcry about what happened, he said nothing at that point. Is there any basis to argue that getting rid of a gun, that this crime wasn't occurring at that point? Counsel says, well, if he threw out the gun, he's not accountable. I think that we need to look at the sequence of events and how closely they happen to one another. We have a shooting. We have the disposal of a gun within moments. And we have flight from the scene. Had this been a different kind of a case where the disposal of the gun happened the next day or several hours later, I think that would be much easier to separate this. Well, couldn't you argue that this is acceptance of illegal proceeds from the perpetrator taking the gun from the shooter and throwing it out the window? Well, you could make that argument, yes. That's one of the six factors, isn't it? The first one is presence. Correct. The second one is presence without any negative reactions. Third is acceptance of illegal proceeds from the perpetrator.  So I'm not sure I understand this argument that flight isn't something we would consider because there was a flight in this case. And then, of course, the fifth is failure to report, and sixth is discontinued association. Yes. Obviously, your argument would be that all of these are present. Well, the question regarding flight, I think if we have flight by itself with none of the other factors being present, that that is not necessarily something someone would be held accountable for. But when you take all of these things in consideration and you put them all together, you have his presence right next to the defendant, not when one person was shot, but when two people were being shot at, combined with the fact that he fled with the defendant after the shootings took place and he never tried to distance himself, even when he was in the presence of the officers, combined with the fact that he never made an outcry to the officers, combined with the fact that he threw the gun out of the window. And we know that he threw the gun out of the window because the officer who testified said that never did he see Bates lean over to throw the gun out the window. And Officer Brooks also testified that the gun that was thrown out the window made it substantially away from the van, which wouldn't have happened if the gun was thrown out of the window by Bates. All right, but here we go. Prior to the shooting, we don't have any evidence about any planning or attempt to carry out the incident, nor do we have any association or link with the victims from the defendant to the victims. You don't need to have every single factor in the series of six factors. But when we're looking at all of these factors that are present and we're taking those factors and we're combining it with the fact that he threw the gun out the window and we're looking at those factors in the light most favorable to the State, the question is could any reasonable fact finder, based on that evidence, find the defendant accountable for the crime that was committed? And the answer is absolutely. But we don't have any evidence to establish that he threw the gun out the window. We do. Officer was specifically asked who threw the gun out the window. And his answer to that was the passenger front, whoever that passenger was. Isn't that the direction from where the weapon came out of? It didn't necessarily say it was the passenger who threw out the weapon. The question that was posed was could you tell who threw it? Officer responds, the passenger front, whoever that passenger was. That's what I mean. Isn't the inference there that it's coming out of the passenger side but not necessarily that the passenger is throwing it out? The answer to the question was, though, was could you tell who threw it? And he says the passenger front. Whoever that was. Whoever that person was sitting up in the passenger. That would be the conclusion I believe would be drawn from the answer to that question in this particular case. Did you suggest in your brief that they were conceding the aggravated UUW? Your Honor, I was going to ask if that was brought up. If you could direct me to the page. I don't recall suggesting that the defendant conceded. Well, perhaps you didn't. No. That's fine. Okay. I know it's not really discussed, though, in the brief. The focus is on the other two counts. Aggravated discharge of the firearm and the aggravated battery. Yes, correct. In response to defendant's brief. That was how the people answered. Yes. Were there any further questions? No. No further questions. Well, for those reasons, the people stated in the people's brief, we would ask that you affirm the defendant's. I'm sorry, the trial court's decision. Thank you. All right. Mr. Castaneda. A brief rebuttal. Yes, Your Honor. A few brief points on rebuttal. The state mentions that Mr. Stanton didn't do an outcry when he saw the police. At that point, he was under arrest. And his Fifth Amendment right to remain silent and attached. He has no duty to make an outcry. And his silence shouldn't be held against him. As far as Your Honor McBride, you mentioned the illegal proceeds and kind of made an analogous to getting rid of the gun. In Williams, where that analogy was made, the circumstances were much different. There, the defendant actively took the gun and went and hid it from the police. Here, more analogous would be somebody taking the illegal proceeds money and tossing it out the window, which is what happened here. And finally, flight itself isn't sufficient to establish accountability. No, and counsel pretty much said that in her argument. Okay, thank you. And that's all for these reasons. We ask this court to reverse all the gun charges, including the aggravated battery, the aggravated discharge of the firearm, and the aggravated unlawful use of a weapon. Thank you, Your Honors. Thank you. The case was well argued, well briefed. Today, we'll take the matter under advisement. Thank you.